District Court
District of Connecticut
FILED AT NEW HAVEN

October 1 ,20 24

By   S. Santos

Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE INSTALLATION AND USE OF A TRACKING DEVICE ON A 2014 GRAY DODGE DURANGO BEARING CONNECTICUT REGISTRATION BN28157 | Case No.  3:24-mj-883 (MEG)<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS AND ORDERS PURSUANT TO 18 U.S.C §§ 3122 AND 3123**

Evan Poisson, being first duly sworn, hereby depose and state as follows:

## I.    REQUESTED AUTHORIZATIONS

1.    I make this affidavit in support of an application for a search warrant authorizing the installation and use of a Global Positioning System (GPS)[1] mobile tracking device on the following vehicle:

a.    A gray Dodge Durango with a Connecticut license plate BN28157 registered to Lindsey EDWARDS at 66 Lexington Street, Hamden, CT (hereinafter "**TARGET VEHICLE**"). As described below and in Attachment A, this vehicle is believed to be utilized by EDWARDS in furtherance of his drug trafficking activities.

---

[1] GPS is a technology that substitutes for the earlier generation of proximity-detecting "bumper-beepers" previously used by law enforcement. The prior generation of beacons functioned by transmitting a radio impulse that a remote tracking device reads to determine the proximity of a beacon. In contrast, a GPS beacon functions by emitting a signal that can be read by a satellite that then transmits the location information in a form that FBI's computer system is able to calculate and project on a map. A GPS mobile tracking device falls within the meaning of "tracking device" as that term is defined in 18 U.S.C. § 3117(b), that is, "an electronic or mechanical device which permits the tracking of the movement of a person or object."

2.     Based on the facts contained in this Affidavit, I submit that there is probable cause to believe and I do believe that the search warrant will reveal evidence, instrumentalities, contraband, or fruits of violations of federal law by the operator of the **TARGET VEHICLE** and others, specifically, violations of 21 U.S.C. §§ 841(a)(1) (Distribution of Narcotics, Possession with Intent to Distribute Narcotics); 846 (Conspiracy to Distribute and Possess with Intent to Distribute Narcotics); and 843(b) (Use of a Communication Facility to Facilitate a Narcotics Trafficking Felony) (hereafter referred to as the "TARGET OFFENSES").

3.     The information to be searched regarding **TARGET VEHICLE** is described in the following paragraphs and in Attachment A, incorporated.

4.     Based on my training and experience, and for all the reasons set forth herein, I submit that probable cause exists to believe that the precise location information described in Attachment B will constitute or lead to evidence of offenses involving the TARGET OFFENSES, as well as the identification of individuals who are engaged in the commission of the TARGET OFFENSES.

5.     Since this Affidavit is being submitted for the limited purpose of authorizing the government to obtain prospective location information described in Attachment B, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for the proposed warrant.

6.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## II.    <u>AGENT TRAINING & BACKGROUND</u>

7.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am a "federal law enforcement officer" within the meaning of the Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws as duly authorized by the Attorney General to request a search warrant.

8.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since August 2023. I attended the Basic Field Training Course at the FBI Academy in Quantico, Virginia. During my training at the FBI Academy in Quantico, Virginia, I received instruction on a variety of investigative and legal matters, to include searches, the drafting of search warrant affidavits, and probable cause. I am currently assigned to the New Haven Division of the FBI, where I have been tasked with investigating violent criminal street gangs involving the smuggling, distribution, and sale of drugs. Prior to becoming an FBI Special Agent, I was a police officer for seven years in Fairfax County, Virginia. As a police officer, I investigated numerous violations of law, including drug distribution, violent street crimes, and firearms offenses. During my career in law enforcement, I have arrested and interviewed subjects of violent criminal street gangs. I have also spoken to other local, state, and federal law enforcement officers regarding the methods employed by narcotics and firearms traffickers to avoid detection by law enforcement.

9.      Based on my training and experience, I know that narcotics traffickers often use cellular telephones and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets. I also know that narcotics traffickers often

3

use vehicles to distribute narcotics and transport narcotics to different stash locations. From my experience, I am familiar with many of the codes, words and phrases that are frequently used by drug traffickers in the acquisition and distribution of narcotics. I know that drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones. I also know that narcotics traffickers and distributors frequently use cellular telephones subscribed to by other persons or businesses and prepaid cellular telephones that require the purchaser to provide little or no identifying information to purchase, activate, and utilize, all of which is done to avoid detection and thwart the efforts of law enforcement.

### III.    <u>PROBABLE CAUSE</u>

10.    Since May 2024, the FBI New Haven Safe Streets and Gangs Task Force ("NHSSGTF") has been investigating a drug trafficking organization led by EDWARDS. Investigators received information from a confidential source alleging that EDWARDS is a large-scale distributor of narcotics. Investigators conducted physical surveillance on EDWARDS and observed EDWARDS conducting hand-to-hand drug transactions. As detailed below, EDWARDS conducted street-level deals of "E-pills", which field tests have shown contain fentanyl compound and/or methamphetamine, while using the **TARGET VEHICLE.** According to the Connecticut Department of Motor Vehicles, the Durango is registered to EDWARDS at 66 Lexington Street, Hamden, CT.  Investigators observed EDWARDS traveling to and from this residence prior to the narcotics sales.

11.    Incorporated through reference is the search warrant signed by the Honorable United States Magistrate Judge Maria E. Garcia on August 19, 2024, which authorized the installation of a GPS tracking device on the **TARGET VEHICLE**.  Case No. 3:24mj714(MEG). The affidavit in support of the August 19, 2024 Search Warrant is incorporated herein and attached

as Attachment C.  Since the authorization of this search warrant, investigators have observed the

**TARGET VEHICLE** being used by EDWARDS in connection to the TARGET OFFENSES as

detailed below.  Investigators are now seeking authorization to maintain the GPS tracker on the

TARGET VEHICLE and continue to collect GPS information from the tracking device.  While

the evidence collected from the initial search warrant has proven helpful in furthering the

investigation into EDWARDS' drug trafficking activity, based on the following, there is probable

cause to believe, and I do believe that continued tracking of the **TARGET VEHICLE**, given the

continued use of the **TARGET VEHICLE** as described below, will result in additional evidence

regarding the TARGET OFFENSES, the identification or confirmation of the identities of potential

co-conspirators, and possible suppliers for the drug trafficking organization.

12.    During the week ending with August 30, 2024, investigators met with an FBI

Confidential Human Source hereinafter referred to as CHS-1 ("CHS-1")[2] to conduct a controlled

purchase of suspected methamphetamine pills from EDWARDS. Investigators provided CHS-1

with $2,000 in U.S. Government funds to complete the controlled purchase. Investigators then

equipped CHS-1 with an audio and video recording device to capture the transaction. At the

direction of, and under the supervision of the investigators, investigators observed CHS-1 call 475-

439-4955 to coordinate a purchase of "E-Pills." Investigators know this number to be utilized by

EDWARDS.  A male voice, which the CHS recognized as EDWARDS, answered the phone and

told CHS-1 that he would send CHS-1 an address. EDWARDS then called CHS-1 back and told

---

[2] Confidential Human Source is a term used to describe those who have gone through a vetting process by the FBI and have proved confidential and reliable. CHS-1 has provided information to investigators that has been corroborated by other investigative means and has proven reliable. CHS-1 is receiving monetary compensation for his/her assistance. CHS-1 has a criminal history that includes prior convictions for: Reckless Endangerment (Class A Misdemeanor), Reckless Driving (Class D Misdemeanor), Risk of Injury (Class C Felony), and Probation Violation.

CHS-1 to go to 158 Farnham Avenue in New Haven. CHS-1 departed from investigators to meet EDWARDS at the agreed upon location.

13.     While conducting surveillance, Investigators observed the **TARGET VEHICLE** parked in a lot off Farnham Avenue. CHS-1 arrived to the area in the CHS vehicle and parked in the lot next to the **TARGET VEHICLE**. CHS-1 then entered the front passenger seat of the **TARGET VEHICLE.** Approximately one minute later, CHS-1 exited the **TARGET VEHICLE,** got into the CHS vehicle, and departed the area. Approximately 15 minutes later, investigators observed EDWARDS walk out of a nearby building and approach the **TARGET VEHICLE**. Investigators observed EDWARDS retrieve an item, possibly U.S. Currency, from the occupant of the **TARGET VEHICLE** before walking back into a nearby building.

14.     Following the controlled buy, CHS-1 met investigators at a pre-arranged location and turned over thirteen small plastic bags containing suspected methamphetamine pills. CHS-1 purchased these pills from an unknown female inside of the **TARGET VEHICLE** with the provided U.S. Government funds. Investigators searched CHS-1 for money and contraband with negative results. Investigators also took possession of the audio and video recording device. The "E-pills" field tested positive for methamphetamine and weighed 629.0 grams including packaging. Drug Enforcement Administration (DEA) Laboratory testing on the seized pills is still pending.

15.     During the week ending with September 13, 2024, investigators met with a second FBI Confidential Human Source hereinafter referred to as CHS-2 ("CHS-2")[3]  to conduct a

---

[3] Confidential Human Source is a term used to describe those who have gone through a vetting process by the FBI and have proved confidential and reliable. CHS-2 has provided information to investigators that has been corroborated by other investigative means and has proven reliable. CHS-2 is receiving monetary compensation for his/her assistance. CHS-2 has a criminal history that includes prior convictions for: Violation of a protection order (class D

controlled purchase of suspected methamphetamine pills from EDWARDS. Investigators provided CHS-1 with $400 in U.S. Government funds to complete the controlled purchase. Investigators again equipped CHS-2 with an audio and video recording device to capture the transaction with EDWARDS. At the direction of, and under the supervision of the investigators, CHS-2 called 475-439-4955 and arranged to purchase the same "E-pills" from EDWARDS. Investigators searched CHS-2 for money and contraband with negative results. CHS-2 departed from investigators to meet EDWARDS at the agreed upon location. While conducting surveillance, Investigators observed EDWARDS enter the **TARGET VEHICLE** in a parking lot off Farnham Avenue and depart the location. Approximately 20 minutes later, investigators observed the **TARGET VEHICLE** pull into the parking lot of the meet location. A few minutes later, the **TARGET VEHICLE** exited the parking lot.

16.     Following the controlled buy, CHS-2 met investigators at a pre-arranged location and turned over four small plastic bags of suspected methamphetamine pills. CHS-2 purchased these pills from EDWARDS with the provided U.S. Government funds. Investigators searched CHS-2 for money and contraband with negative results. Investigators also took possession of the audio and video recording device. The "E-pills" field tested positive for methamphetamine and weighed 125.5 grams including packaging. Drug Enforcement Administration (DEA) Laboratory testing on the seized pills is still pending.

---

felony), Assault 2nd (class D felony), Unlawful restraint 1st (class D felony), Criminal Mischief 1st (class D felony), Robbery 2nd (class C felony), Larceny 3rd (class D felony), and numerous misdemeanor charges to include Assault, Harassment, probation violations, criminal mischief, and others.

17.     During the week ending with September 20, 2024, at the direction of, and under the supervision of the investigators, CHS-1 texted the telephone number 475-439-4955 and arranged to purchase the same "E-pills" from EDWARDS. Investigators searched CHS-1 for money and contraband with negative results. Investigators provided CHS-1 with $1,000 in U.S. Government funds to complete the controlled purchase. Investigators again equipped CHS-1 with an audio and video recording device to capture the transaction with EDWARDS. CHS-1 departed from investigators to meet EDWARDS near 545 Whalley Avenue in New Haven

18.     While conducting surveillance, Investigators observed the **TARGET VEHICLE** parked near 545 Whalley Avenue. The CHS arrived to the location and parked on the street behind the **TARGET VEHICLE.** Investigators then observed EDWARDS exit a nearby smoke shop business and approach the passenger side of the CHS vehicle. EDWARDS then walked to the **TARGET VEHICLE** before walking back to the front passenger window of the CHS vehicle. The CHS then departed from the location.

19.     Following the controlled buy, CHS-1 met investigators at a pre-arranged location and turned over small plastic bags of suspected methamphetamine pills. CHS-1 purchased these pills from EDWARDS with the provided U.S. Government funds. CHS-1 told investigators that, during the purchase, CHS-1 observed EDWARDS retrieve a small black bag, which contained the pills, from underneath the front passenger seat of the **TARGET VEHICLE.** Investigators searched CHS-1 for money and contraband with negative results. Investigators also took possession of the audio and video recording device. The "E-pills" field tested positive for methamphetamine and weighed 207.0 grams including packaging. Drug Enforcement Administration (DEA) Laboratory testing on the seized pills is still pending.

**APPLICABLE GLOBAL POSITIONING SYSTEM TECHNOLOGY**

8

23.     Given the information set forth above, there is probable cause to believe, and I do believe, that the locations of the **TARGET VEHICLE**, which EDWARDS is utilizing in furtherance of his drug trafficking activities, constitutes evidence of those criminal violations, and will provide evidence of criminal activities, including leading to the identification of other individuals who are engaged in the commission of the offenses and identifying locations where EDWARDS and others are storing narcotics, proceeds of narcotics sales, and/or engaging in criminal activity.

24.     To track the movements of the **TARGET VEHICLE** effectively, and to decrease the chance of detection, I seek to place a tracking device in or on the **TARGET VEHICLE** while it is in the District of Connecticut. The information obtained from the GPS device will facilitate physical surveillance of the **TARGET VEHICLE** as well as their operators and occupants, and it will constitute or lead to evidence of the Target Offenses because it will assist investigators in ascertaining, *inter alia*, the locations where EDWARDS, and/or their associates obtain narcotics, store narcotics, sell narcotics and store proceeds from the sales of narcotics.

25.     Based upon the foregoing, I submit that there is probable cause to believe that use of GPS mobile tracking devices on the **TARGET VEHICLE** will lead to the discovery of the items set forth in Attachment B, which constitute evidence, fruits, and/or instrumentalities of the Target Offenses.

## IV.    <u>AUTHORIZATION REQUEST</u>

33.     Based upon the foregoing, I request that the Court issue warrants authorizing law enforcement officers to: (1) initiate signaling to and from the tracking devices in order to monitor the **TARGET VEHICLE** at any time of day or night within ten (10) days from the date of this warrant; (2) enter onto private property for the limited purpose of maintaining, repairing, or

removing the tracking device at any time of day or night; (3) move the **TARGET VEHICLE** to a concealed area for the limited purpose of maintaining, repairing, or removing the tracking device at any time of day or night; and (4) maintain, use, monitor, and record the signals and information from the tracking device at any time of day or night, for a period of forty-five (45) days from the issuance of the warrant, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the **TARGET VEHICLE** leaves the District of Connecticut but remains within the United States.

34.    To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the Court authorize installation and removal of the tracking device during both daytime and nighttime hours. Given the evidence that EDWARDS, and his associates are involved in distributing narcotics, investigators will seek times and places to affect the installation, repair, replacement, and removal of the tracking device that will best ensure the safety of investigators and best ensure the integrity and secrecy of this investigation.

35.    I also request authorization to enter private property to execute the search warrant for the **TARGET VEHICLE**, specifically, 66 Lexington Street in Hamden, Connecticut, the address in which the vehicle is registered and has been observed parked during physical and pole camera surveillance throughout the investigation.

36.    In the event the Court grants this application, there will be periodic monitoring of the tracking devices during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

37.    To track the locations of the **TARGET VEHICLE** at all times, it will be necessary to monitor the tracking device continuously, which may include monitoring signals produced from

inside enclosed garages or other locations neither open to the public nor accessible to visual surveillance, and signals produced from outside the District of Connecticut.

38.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I request that the warrant delay notification of the execution of the warrant for a period of 60 days after the end of the authorized period of because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation. The investigation is not known to the targets of the investigation. Providing immediate notification of the execution of the warrant may have an adverse result, as defined in 18 U.S.C. § 3103a(b). Providing immediate notice would seriously jeopardize the ongoing investigation, by alerting EDWARDS to the federal interest in his locations and illegal activities and potential cause them to alert his coconspirators to the investigation. Such a disclosure would give EDWARDS, or his coconspirators an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). Thus, I request that the Court authorize the delayed notification of the execution of this warrant.

39.     As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorized the seizure of location information (as defined in 18 U.S.C. § 2510), there is reasonable necessity for the seizure for the reasons set forth above. *See* U.S.C. § 3103a(b)(2).

40.     I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until **November 17, 2024**, which will be approximately 60 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the

warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** or user of the **TARGET VEHICLE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B , which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

41.    I further request that the Court order that all papers in support of these applications, including the affidavit and search warrants, be sealed until further order of the Court, except that the government may provide the search warrants to the Wireless Provider. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

EVAN
POISSON

Digitally signed by EVAN
POISSON
Date: 2024.10.01 09:36:43
-04'00'

EVAN POISSON
FBI SPECIAL AGENT

Subscribed and sworn to me over the telephone or other reliable means on September ___, 2024.

12

Maria E. Garcia    Digitally signed by Maria E. Garcia
Date: 2024.10.01 17:36:04 -04'00'

_____

HON. MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

**TARGET VEHICLE** is a gray Dodge Durango with Connecticut license plate BN28157 which is registered to Lindsey EDWARDS, 66 Lexington Street, Hamden, Connecticut. **TARGET VEHICLE** is known to be operated by EDWARDS in the District of Connecticut. A photograph of **TARGET VEHICLE** from the physical surveillance is set forth below.



**ATTACHMENT B**

The warrant authorizes law enforcement to initiate a signal to and from a Global Positioning System (GPS) mobile tracking device on each of the **TARGET VEHICLE** described in Attachment A (and allowing for any maintenance and repair of the mobile tracking device) in order to monitor and record signals and information obtained and produced by each GPS mobile tracking device, for a period of 45 days, during all times of day and night, for the purpose of obtaining evidence of violations of federal law, including violations of Title 21, United States Code, Sections 841, 846, and 843(b) (Target Offenses), by Lindsey Edwards and others, known and unknown, including information concerning the locations of the **TARGET VEHICLE**, and including when such signals and information are produced when any or all of the **TARGET VEHICLE** is indoors or in areas where there may be a reasonable expectation of privacy, in the District of Connecticut and outside of the District of Connecticut but within the United States. Information about the locations of the **TARGET VEHICLE** includes all available GPS data, latitude-longitude data, and other precise location information, as well as all data about which "towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal; from the GPS tracking device on the **TARGET VEHICLE** described in Attachment A. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Law enforcement is also authorized to enter private property located at **66 Lexington Street, Hamden, Connecticut**, for the limited purpose of executing the search warrant for **TARGET VEHICLE**.

2